## IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| Marketta Thomas, on behalf of the Estate of Danny Ray Thomas; Donald Woods, Individually; Adenike Thomas, Individually; Naisha Bell, as Next Friend of M.K. Thomas, Individually; Diane Turner, as Next Friend of B.D. Turner, Individually; Necole West, as Next Friend of D.R. Thomas, (12), Individually; Denise Matthews, as Next Friend of D.R. Thomas, (3), Individually; Ronshell Hampton, as Next Friend of L.N. Hampton, Individually | § § § § § § § § § § § § § § § § § § § | CIVIL ACTION NO. 4:18-CV-1152 |
| *Plaintiffs,* | | JURY DEMAND |
| VS. | | |
| HARRIS COUNTY, TEXAS; CAMERON BREWER | | |
| *Defendants.* | | |

## SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW Plaintiffs, Marketta Thomas, on Behalf of the Estate of Danny Ray Thomas;

Donald Woods, Individually; Adenike Thomas, Individually; Naisha Bell, as Next Friend of M.K.

Thomas, Individually; Diane Turner, as Next Friend of B.D. Turner, Individually; Necole West,

as Next Friend of D.R. Thomas, Individually; Denise Matthews, as Next Friend of D.R. Thomas,

Individually; and Ronshell Hampton, as Next Friend of L.N. Hampton, Individually (collectively

referred to as "Plaintiffs") and files this Second Amended Complaint and Demand for Jury Trial.

In support thereof, Plaintiff states as follows:

# I.
## PRELIMINARY STATEMENT

1.     This case arises out of the fatal shooting of Danny Ray Thomas ("Mr. Thomas"), a thirty-five-year-old African American male, by a Harris County Sheriff's Office Deputy, Defendant Cameron Brewer, on March 22, 2018.  Mr. Thomas was the victim of unlawful deadly force while unarmed and not in the commission of any crime.  These federal and state law claims are brought on behalf of Mr. Thomas's estate and on behalf of the individuals listed herein to establish recognition that the shooting of Mr. Thomas was unjust and contrary to established law, to secure compensation for these wrongful acts, and to help end the violence perpetrated by Harris County, by and through the Harris County Sheriff's Office, against the people of this state.

2.     There is no other pending or unresolved civil action arising out of the transaction or occurrence alleged in this Complaint.

# II.
## PARTIES AND SERVICE

3.     Plaintiff Marketta Thomas, as Administrator of the Estate, brings claims on Behalf of the of the Estate of Danny Ray Thomas.  Marketta Thomas is a citizen of the United States, and the State of Texas, and resides in Harris County, Texas.  Marketta Thomas is Mr. Thomas's sister.

4.     Plaintiff Donald Woods brings claims Individually.  Donald Woods is a citizen of the United States, and the State of Texas, and resides in Harris County, Texas.  Donald Woods is Mr. Thomas's father.

5.     Plaintiff Adenike Thomas brings claims Individually.  Adenike Thomas is a citizen of the United States, and the State of Texas, and resides in Harris County, Texas.  Adenike Thomas is Mr. Thomas's daughter.

6.      Plaintiff Naisha Bell brings claims as Next Friend of minor M.K. Thomas.  Both Naisha Bell and M.K. Thomas are citizens of the United States, and the State of Texas, and reside in Harris County, Texas.  M.K. Thomas is Mr. Thomas's daughter.

7.      Plaintiff Diane Turner brings claims as Next Friend of minor B.D. Turner.  Both Diane Turner and B.D Turner are citizens of the United States, and the State of Texas, and reside in Harris County, Texas.  B.D. Turner is Mr. Thomas's son.

8.      Plaintiff Necole West brings claims as Next Friend of minor D.R. Thomas (twelve-years-old).  Both Necole West and D.R. Thomas (twelve-years-old) are citizens of the United States, and the State of Texas, and reside in Harris County, Texas. D.R. Thomas (twelve-years-old) is Mr. Thomas's son.

9.      Plaintiff Denise Matthews brings claims as Next Friend of minor D.R. Thomas (3-years-old).  Both Necole West and D.R. Thomas (three-years-old) are citizens of the United States, and the State of Texas, and reside in Harris County, Texas. D.R. Thomas (three-years-old) is Mr. Thomas's son.

10.     Plaintiff Ronshell Hampton brings claims as Next Friend of minor L.N. Hampton. Both Ronshell Hampton and L.T. are citizens of the United States, and the State of Texas, and reside in Harris County, Texas.  L.T. is Mr. Thomas's daughter.

11.     Defendant Harris County, Texas is a municipality organized under the laws of the State of Texas, charged with operating the Harris County Sheriff's Office, within Harris County. Harris County Sheriff's Office is a subdivision of Harris County and Harris County is authorized by the laws of the State of Texas to operate the Harris County Sheriff's Office.  At all material times, Defendant Harris County, Texas was acting under the color of state law.  Harris County may be served with process by serving the Harris County Judge, The Honorable Ed Emmett, 1001

Preston, Suite 911, Houston, Texas, 77002. Defendant has appeared and answered, so no additional service is necessary or requested at this time.

12. Defendant Cameron Brewer is a citizen of the United States and the State of Texas and resides in Harris County Texas. Defendant Brewer is sued in his individual capacity. Defendant Brewer may be served with process by serving him at 606 Kiley Drive Houston, Texas 77073. Defendant has appeared and answered, so no additional service is necessary or requested at this time.

## III.
## JURISDICTION AND VENUE

13. Plaintiffs invoke the jurisdiction of this Court pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 1985, 42 U.S.C. § 1986, 42 U.S.C. § 1988, and 28 U.S.C. § 1331, as this cause arises under the laws of the United States providing for the protection of Civil Rights, and may be enforced against all Defendants, herein named, through § 5 of the Fourteenth Amendment to the United States Constitution. Further, the unlawful actions alleged in this cause were committed in the Southern District of Texas, and, therefore, venue is proper pursuant to 18 U.S.C. § 1391.

14. This Court has supplemental jurisdiction over the state law claims discussed below under 28 U.S.C. § 1367(a) because they arose out of the same case or controversy.

## IV.
## NATURE OF ACTION

15. This is a civil rights action for damages brought pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 1985, and 42 U.S.C. § 1986, and the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution and related state law claims, against the above-named Defendants for their wrongful acts, committed in Defendant Brewer's individual capacity and pursuant to

Defendant Harris County's unconstitutional policies and procedures, resulting in the wrongful death of Mr. Thomas.

**V.**
**FACTUAL ALLEGATIONS**

*An unarmed, non-threatening African American man in crisis is killed by a Harris County Sheriff's Office deputy*

16.     In the middle of the afternoon on March 22, 2018, Danny Ray Thomas became another police-shooting victim—and yet another tragic example of Harris County Sheriff's Office deputies using excessive, deadly force against unarmed African American men.  Around 1:00 p.m. that day, Defendant Cameron Brewer, a Harris County Sheriff's Office deputy, came upon Mr. Thomas in the street at the intersection of Imperial Valley and Greens Road in Houston, Texas. Mr. Thomas, a thirty-five-year old African American man, was clearly in a state of crisis at the time Defendant Brewer first saw him.  Mr. Thomas was visibly unarmed, wobbling unsteadily, and had his pants around his ankles.  Rather than attempt to assist Mr. Thomas, Defendant Brewer drew his weapon on Mr. Thomas, demanded that he get on the ground, and a mere sixteen seconds later, fired his weapon at Mr. Thomas, killing him with a single fatal shot.  Within thirty seconds of Defendant Brewer arriving on the scene, Defendant Brewer fatally shot Mr. Thomas, an unarmed, non-dangerous, African American man in crisis.

17.     Defendant Brewer was armed with a taser at the time he shot Mr. Thomas, but he didn't bother to use it.

18.     Defendant Brewer was armed with a police baton at the time he shot Mr. Thomas, but he didn't bother to use it.

19.     Defendant Brewer was armed with pepper spray at the time he shot Mr. Thomas, but he didn't bother to use it.

20.     Defendant Brewer did not attempt to speak to Mr. Thomas in a professional and nonthreatening way, or assess his medical condition or mental or psychological state, even though objective factors (Mr. Thomas's wobbly stance, his pants being around his ankles, and his signs of visible distress) required that he do so. In a press conference after the incident, Harris County Sheriff Ed Gonzalez acknowledged that Mr. Thomas "was obviously in a state of crisis of some kind."

21.     Defendant Brewer did not attempt to use any other less-lethal force to gain control of the situation. He went immediately to lethal force even though he was faced with a clearly unarmed subject.

22.     Defendant Brewer did not attempt to use any de-escalation techniques.

23.     Officer Brewer's dashcam captured Defendant Brewer's approach, and shows Mr. Thomas wobbling and stumbling as he walks, with his pants around his ankles, apparently dazed, and unquestionably unarmed. Available at: https://www.youtube.com/watch?v=4FwnzEG0YIs&feature=youtu.be (last accessed April 3, 2018). The dashcam video does not capture the actual shooting. Defendant Brewer and Defendant Harris County contend that Defendant Brewer's body cam was charging in the deputy's car at the time of the shooting. A cellphone video taken by an eyewitness also shows that Mr. Thomas was clearly unarmed, unthreatening, and visibly in need of assistance: available at: https://www.houstonchronicle.com/news/houston-texas/houston/article/WATCH-Video-shows-unarmed-man-with-pants-down-12778068.php.


*A History of improper police shootings in Harris County*

24.     Between the Harris County Sheriff's Office and the Houston Police Department, Mr. Thomas's shooting was the seventh officer-involved shooting in Harris County in 2018 alone, and his was the fifth death.  Paul Heaton and Amanda Wong, "Here's How Houston Can Prevent Police Shootings," Houston Chronicle, available at: https://www.houstonchronicle.com/opinion/outlook/article/Here-s-how-Houston-can-prevent-police-shootings-12785961.php (last accessed April 2, 2018).

25.     During the first year police shootings were reported, the number of police shootings in Houston against unarmed citizens was significantly higher than the number in Texas's other large cities.  "Police Shootings: Texas Now Tracks the Deadly Encounters, But the Data Needs to be Standardized," available at: https://www.houstonchronicle.com/opinion/editorials/article/Police-shootings-9208825.php (last assessed April 2, 2018).  Police in Texas's largest cities shot 159 people in that first year of reporting, and officers in Houston pulled the trigger on thirty-one of them—compared to only eight in both San Antonio and Dallas, and five in both Austin and Fort Worth.  *Id.*  Although Houston has a larger population, the disparity is disturbing and unacceptable.  *See id.*  From 2005 to 2016, Houston police officers shot at more than 460 people and killed 111 of them.  Leif Reigstad, "Fatal Police Shooting of Danny Ray Thomas Tests Houston's Progressive Law Enforcement Leaders," Texas Monthly, available at: https://www.texasmonthly.com/news/fatal-police-shooting-danny-ray-thomas-tests-houstons-progressive-law-enforcement-leaders/ (last accessed April 2, 2018).  Twenty percent of those shot at were unarmed.  *See id.*

26.     Past incidents in the last three years alone gave Defendant Harris County actual and/or constructive notice of the unconstitutional policies, practices, and/or customs detailed herein.  Specifically:

a. In March 2018, a Harris County Sheriff's Office deputy shot and killed a man on the 17900 block of Seven Pines Drive around 5:28 a.m.; a person assisting police was also shot in the arm by the deputy.

b. In August 2017, Harris County Sheriff's Office deputies opened fire on a two-story townhome while executing a search warrant for the Federal Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"). Officers heard gunfire from one of the townhome's windows. Upon entering the townhome, deputies expected to find a suspected drug dealer, twenty-year-old Eriberto Suarez. But the man who lay dead wasn't Suarez. Nor was he the target of an open ATF investigation. Instead, the man who was shot and killed was twenty-four-year-old Nicholas Solis, the half-brother of Suarez's estranged wife. Mr. Solis had been asleep on the couch in the moments leading up to the gunfire, next to his fiancé and her one-year-old daughter.

c. In June 2017, Harris County Sheriff's Office deputy Arthur Carbonneau shot and killed a fourteen-year-old mentally ill boy, E.E., in the head during an assault investigation at a north Houston apartment complex. E.E. was unarmed and non-threatening and clearly displayed that he was mentally impaired.

d. In May 2017, a Harris County Sheriff's Office deputy shot and killed a mentally unstable woman during a botched welfare check. The woman was clearly in a state of crisis and experiencing from mental health problems.

e. In April 2017, a Harris County Sheriff's Office deputy shot and killed thirty-two-year-old Michael Maldonado during an alleged attempted car theft. Four different officers shot multiple times into the vehicle, even as Mr. Maldonado's brother attempted to flee on foot, and never gave Mr. Maldonado a chance to surrender, nor

did the officers employ non-lethal force.  The attorney for Mr. Maldonado's family called the shooting "an execution," questioning, "You're telling me it took that many shots to subdue him?  Who were they trying to kill, King Kong?"  Witnesses to the event reported that the shooting officers were never in any danger.

f.  In March 2017, Harris County Sheriff's Office deputy shot and injured a forty-three-year woman in broad daylight even though the woman did not carry, exhibit, or use a deadly weapon of any kind.

g.  In March 2017, Harris County Sheriff's Office deputy, Christopher Mook, fired fifteen bullets into the driver's *side* door of Ricardo Llamas' vehicle (not at the front of the vehicle); seven bullets struck Mr. Llamas.  The vehicle was more than fifteen feet away from the officer at the time of the shooting.  The Harris County Sheriff's Office never turned over the shooting details and they were never investigated by a Harris County grand jury.  Llamas did not pose any threat to the officer, and the bullet holes into the side—rather than front—of the vehicle evidences that the shooting was unwarranted. Evidence further showed that officer was on one knee, shooting at the side of the Jeep from about 15 feet away.  Officer Christopher Mook frequently wore a "Captain America" shirt under his police uniform and he often displayed images of himself with weapons on his social media pages.  Civil rights groups informed Harris County Sheriff's Office of criticisms regarding Harris County's lack of transparency in the case and for instituting a criminal trial against Mr. Llamas before the civil investigation into the officer's actions was complete.

h.  In August 2016, Harris County Sheriff's Office deputies shot into the home of Jason and Pamela Jensen, a young African American couple.  Deputies hit the couple's

one-year-old bulldog in the face and bullets struck the couple. Mr. and Mr. Jensen did not carry, exhibit, or use a deadly weapon of any kind nor did they pose a threat to shooting officers.

i. In March 2016, a Harris County Sheriff's Office deputy shot and injured an African American man during a routine traffic stop.

j. In March 2016, a Harris County Sheriff's Office deputy shot and killed Marco-Antonio Loud, a twenty-year-old African American man. Mr. Loud did not carry, exhibit, or use a deadly weapon of any kind.

k. In February 2016, a Harris County Sheriff's Office deputy shot an eighteen-year-old Hispanic man. It does not appear the man carried, exhibited, or used a deadly weapon of any kind.

l. In November 2015, a Harris County Sheriff's Office deputy shot and killed Jeray Dilrichard Chatham, a thirty-year-old African American male. Mr. Chatham was a former Oklahoma State University Football player and was, allegedly, improperly at the house of his ex-girlfriend. While deputies contended that Mr. Chatham had initially threatened them with a knife, they also stated that he subsequently ran away from deputies and stripped down to his underwear. An individual in his position, running away from deputies, did not justify the use of deadly force. As Mr. Chatham's father expressed after his son's death: "How is running away causing him to fear for his life?" Additionally, Harris County Sheriff's Office failed to timely file the report on Mr. Chatham's shooting as required by law. Harris County Sheriff's Office's delay in filing the paperwork in this deadly police shooting case

is a troubling (and unlawful) trend that has the effect of diminishing publicity and accountability for deadly shootings.

m. In October 2015, a Harris County Sheriff's Office deputy shot and injured a twenty-five-year-old African American male.

n. Harris County Sheriff's Office also never filed a report on the officer-caused death of Claudia Abigail Garcia-Miranda, which occurred in September 2017. Harris County Sheriff's Office has been notified of this failure, which is another example of the unlawful policy, practice, and custom of Harris County Sheriff's Office of failing to timely report incidents of officers' uses of deadly force, and its lack of transparency and accountability regarding these incidents.

27. At all times relevant hereto, Defendant Harris County and Defendant Brewer were acting under the color of law.

## VI.
## CAUSES OF ACTION

**COUNT 1:**  **DEPRIVATION OF CIVIL RIGHTS IN VIOLATION OF 42 U.S.C. § 1983 (FOURTH AMENDMENT—EXCESSIVE FORCE) AGAINST DEFENDANT BREWER**

28. Plaintiffs adopt and incorporate by reference each and every allegation in the preceding paragraphs as though fully set forth herein.

29. Mr. Thomas was entitled to be free and is protected from the use of excessive force pursuant to the parameters of the Fourth and Fourteenth Amendments of the United States Constitution. Pursuant to 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments, Defendant Brewer owed Mr. Thomas a duty to act prudently, with reasonable care, and otherwise to avoid unreasonable and excessive force.

30.     Reasonable officers in the position of Defendant Brewer at the time of this incident, i.e., prior to the use of deadly force against Mr. Thomas, would have known, in light of existing law, that the unlawfulness of this action was apparent under the circumstances, would be a violation of clearly established law, and of Mr. Thomas's constitutional rights against unlawful deadly force.  The acts and omissions of Defendant Brewer violated Mr. Thomas's constitutional rights and were an extreme and excessive use of force, were objectively unreasonable based on the totality of the circumstances, and violated the rights held by Mr. Thomas, to his life and the integrity of his person as protected by the Fourth and Fourteenth Amendments.

31.     Defendant Brewer violated Mr. Thomas's Fourth and Fourteenth Amendment rights as follows:

a.  Defendant Brewer failed to use an objectively reasonable assessment of the facts when he decided to use excessive force on Mr. Thomas, even after observing that Mr. Thomas was unarmed and clearly in a state of crisis or suffering from mental health problems, and was not then presenting any objective danger to others or himself.

b.  Defendant Brewer made a choice to unreasonably use deadly force and this decision to use deadly force did not relate in any way to a proper and conscious assessment of danger and was objectively unreasonable under the circumstances.

c.  Defendant Brewer failed to use a non-deadly degree of force (and the circumstances called for no use of force) and that choice was objectively unreasonable under the circumstances.

32.     As a direct and proximate result of the aforementioned conduct, Mr. Thomas suffered terror and fear as Defendant Brewer fired his weapon at Mr. Thomas, striking him, and

causing his death.  Mr. Thomas also suffered physical injury, emotional distress, psychological trauma, conscious pain and suffering, and ultimately death as a result of the aforementioned conduct.

33.     As further direct and proximate result of the aforementioned conduct, Mr. Thomas's surviving family members, heirs, and assigns, and/or next of kin, have suffered permanent damages including, but not limited to: grief, anguish, emotional distress, funeral and burial costs, loss of society and companionship, and other damages.

**COUNT 2:    DEPRIVATION OF CIVIL RIGHTS IN VIOLATION OF 42 U.S.C. § 1983 (FOURTEENTH AMENDMENT—DUE PROCESS) AGAINST DEFENDANT BREWER**

34.     Plaintiffs adopt and incorporate by reference each and every allegation in the preceding paragraphs as though fully set forth herein.

35.     Mr. Thomas's Fourteenth Amendment right provides that no State shall "deprive any person of life, liberty, or property without due process of law." CONST. AMEND. XIV.  The principle that a person has a constitutionally protected liberty interest to be free to deprivation of life and liberty is clear.  Defendant Brewer violated Mr. Thomas's Fourteenth Amendment right by and though taking his life and liberty without due process of law.

36.     As a direct and proximate result of the aforementioned conduct, Mr. Thomas suffered terror and fear as Defendant Brewer fired his weapon at Mr. Thomas, striking him, and causing his death.  Mr. Thomas also suffered physical injury, emotional distress, psychological trauma, conscious pain and suffering, and ultimately death as a result of the aforementioned conduct.

37.     As further direct and proximate result of the aforementioned conduct, Mr. Thomas's surviving family members, heirs, and assigns, and/or next of kin, have suffered

permanent damages including, but not limited to: grief, anguish, emotional distress, funeral and burial costs, loss of society and companionship, and other damages.

**COUNT 3:** **DEPRIVATION OF CIVIL RIGHTS IN VIOLATION OF 42 U.S.C. § 1983 (FOURTEENTH AMENDMENT—EQUAL PROTECTION) AGAINST DEFENDANT BREWER**

38.     Plaintiffs adopt and incorporate by reference each and every allegation in the preceding paragraphs as though fully set forth herein.

39.     At all times relevant herein, Mr. Thomas had a right to equal protection under the law as afforded and provided by the Fourteenth Amendment and protected by the same and 42 U.S.C. § 1983.

40.     Defendant Brewer chose to use and used excessive force against Mr. Thomas and/or otherwise treated Mr. Thomas differently as a basis of his race and mental capacity in violation of his equal protection rights.

41.     As a direct and proximate result of the aforementioned conduct, Mr. Thomas suffered terror and fear as Defendant Brewer fired his weapon at Mr. Thomas, striking him, and causing his death.  Mr. Thomas also suffered physical injury, emotional distress, psychological trauma, conscious pain and suffering, and ultimately death as a result of the aforementioned conduct.

42.     As further direct and proximate result of the aforementioned conduct, Mr. Thomas's surviving family members, heirs, and assigns, and/or next of kin, have suffered permanent damages including, but not limited to: grief, anguish, emotional distress, funeral and burial costs, loss of society and companionship, and other damages.

**COUNT 4:** ***MONELL* CLAIM UNDER 42 U.S.C. § 1983 AGAINST DEFENDANT HARRIS COUNTY: UNCONSTITUTIONAL POLICIES, PRACTICES, AND/OR CUSTOMS**

43.     Plaintiffs adopt and incorporate by reference each and every allegation in the preceding paragraphs as though fully set forth herein.

44.     Defendant Harris County had an unconstitutional policy, practice, and/or custom of using excessive force against citizens.  The unconstitutional policies, practices, and/or customs are as follows:

a.  Allowing, encouraging, requiring, and or/training officers to use deadly force instead of using less obtrusive and/or harmful detention techniques;

b.  Allowing, encouraging, requiring, and or/training officers to use deadly force instead of using less obtrusive and/or harmful detention techniques when confronting non-dangerous subjects;

c.  Allowing, encouraging, requiring, and or/training officers to use deadly force instead of using less obtrusive and/or harmful detention techniques when confronting African American males;

d.  Allowing, encouraging, requiring, and or/training officers to use deadly force instead of using less obtrusive and/or harmful detention techniques when confronting a person in crisis and dealing with mental health issues;

e.  Allowing, encouraging, requiring, and or/training officers to use deadly force in lieu of physical restraint and proper detention techniques;

f.  Allowing, encouraging, requiring, and or/training officers to use deadly force in lieu of physical restraint and proper detention techniques when confronting non-dangerous subjects;

g.  Allowing, encouraging, requiring, and or/training officers to use deadly force in lieu of physical restraint and proper detention techniques when confronting African American males;

h.  Allowing, encouraging, requiring, and or/training officers to use deadly force in lieu of physical restraint and proper detention techniques when confronting a person in crisis and dealing with mental health issues;

i.  Allowing, encouraging, requiring, and or/training officers to use deadly force rather than other less confrontational and less harmful methods;

j.  Allowing, encouraging, requiring, and or/training officers to use deadly force rather than other less confrontational and less harmful methods when confronting non-dangerous subjects;

k.  Allowing, encouraging, requiring, and or/training officers to use deadly force rather than other less confrontational and less harmful methods when confronting African American males;

l.  Allowing, encouraging, requiring, and or/training officers to use deadly force rather than other less confrontational and less harmful methods when confronting a person in crisis and dealing with mental health issues;

m.  Allowing, encouraging, requiring, and or/training and supervising officers to use excessive force as a first resort rather than training officers to assess the totality of circumstances in an objectively reasonable manner;

n.  Allowing, encouraging, requiring, and or/training and supervising officers to use excessive force as a first resort against non-dangerous subjects rather than training officers to assess the totality of circumstances in an objectively reasonable manner;

o.  Allowing, encouraging, requiring, and or/training and supervising officers to use excessive force as a first resort against African American males rather than training officers to assess the totality of circumstances in an objectively reasonable manner;

p.  Allowing, encouraging, requiring, and or/training and supervising officers to use excessive force as a first resort against individuals in crisis and dealing with mental health issues rather than training officers to assess the totality of circumstances in an objectively reasonable manner;

q.  Allowing, encouraging, requiring, and/or training officers to confront individuals in crisis or dealing with mental health issues in the same manner as arrestees.

r.  Allowing officers to utilize bias when exercising force and discriminate on the basis of race and other characteristics;

s.  Allowing Harris County Sheriff's Office deputies to engage in stop, search, citation and arrest practices that do not adhere to the Fourth Amendment;

t.  Allowing Harris County Sheriff's Office deputies to engage in stop, search, citation and arrest practices that discriminated on the basis of race and other protected characteristics;

u.  Allowing Harris County Sheriff's Office deputies to not wear their body cameras, or excusing the failure of deputies from wearing the body cameras; and

v.  Allowing and/or encouraging that deputies are not held accountable for their uses of excessive force by failing to timely file reports with the State of Texas on all officer-involved shootings.

45.    Additionally, Harris County had an unconstitutional policy, practice, and/or custom of failing to adequately investigate and discipline police officers who used excessive force on citizens, especially African American males and those in crisis and dealing with mental health issues.

46.    Additionally, the Harris County Sheriff's Office inadequately and unconstitutionally investigates officer-involved shootings.  Upon information and belief, after a cursory investigation, the Harris County Sheriff improperly delegates to the Harris County District Attorney's office the responsibility to investigate the conduct of the officers who were involved in shootings, with the tacit understanding that if no criminal indictment issues, the officer would not further be investigated or disciplined.  The internal affairs division does not conduct a separate and independent investigation from the homicide unit or other departments within the Harris County Sheriff's Office.  Rather, the investigator acts as a clerk by collecting the reports of the homicide unit and other agencies to submit to the Administrative Review Board.  When the Administrative Review Board receives the report, it does not make an independent decision about whether the officer used excessive force.  Instead, the Administrative Review Board waits to see if the grand jury hands down a criminal indictment against the Deputy Sheriff.  This process is administered under a criminal law standard by another state agency, the Harris County District Attorney's Office.  Additionally, Texas law prohibits anyone involved in the process from disclosing what evidence was presented to or relied on by a grand jury.  This deliberate delegation of investigative power shields the entire process from the public, from the Administrative Review Board, and from any potential plaintiff in a civil rights suit arising from the officer's actions.  If evidence incriminating the Deputy Sheriff was not provided to the Harris County District Attorney's Office or if the Harris County District Attorney did not present the incriminating evidence to the grand

jury, no one could complain about it under the then-existing custom, policy, and practice of the Harris County Sheriff's Office. In *James v. Harris County*, 577 F.3d 612 (5th Cir. 2009), the United States Court of Appeals for the Fifth Circuit recognized this conduct established the existence of an official policy of Harris County.

47. The aforementioned unconstitutional policies, practices, and/or customs deprived Mr. Thomas his particular rights under: (1) the Fourth Amendment to the United States Constitution to be free from excessive use of force; (2) the Fourth Amendment to the United States Constitution to be secure in his person and against unreasonable seizures; (3) the Fourteenth Amendment to the United States Constitution against the deprivation of life and liberty without due process of law; and (4) the Fourteenth Amendment to the United States Constitution prohibiting denying persons equal protection under the law. The aforementioned unconstitutional policies, practices, and/or customs were in effect at the time of Mr. Thomas's shooting.

48. As a part of the culture, custom, and practice of the Harris County Sheriff's Office, deputies are trained to assess situations in what is referred to as an "action/reaction" motive. Deputies are trained and expected to use excessive or deadly force before a person has a chance to act and consequently Harris County Sheriff's Office relies on excessive force as a primary law enforcement tool when faced with a person who may be acting in any unusual way.

49. Harris County was deliberately indifferent to the substantial risk that the aforementioned policies, practices, and/or customs posed to Mr. Thomas's rights under: (1) the Fourth Amendment to the United States Constitution to be free from excessive use of force; (2) the Fourth Amendment to the United States Constitution to be secure in his person and against unreasonable seizures; (3) the Fourteenth Amendment to the United States Constitution against

the deprivation of life and liberty without due process of law; and (4) the Fourteenth Amendment to the United States Constitution prohibiting denying persons equal protection under the law.

50. Past incidents gave Defendant Harris County actual and/or constructive notice of the aforementioned unconstitutional policies, practices, and/or custom as set forth herein. And yet, Harris County failed to take precautions and/or corrective measures prior to the shooting of Mr. Thomas.

51. The acts of Defendant Brewer were endorsed and approved by Harris County and the Harris County Sheriff's Office and Harris County Sheriff's Office employees, including Defendant Brewer. Harris County, by and through the Harris County Sheriff's Office, ratified the conduct of its deputies and officers in that one or more authorized policymaker(s) for the county approved of the decisions of such deputies and the basis for them, thus making Harris County responsible for such conduct.

52. At all times relevant hereto, Defendant Harris County and Defendant Brewer acted under color of state law.

53. Under Texas law, sheriffs are "final policymakers" in the area of law enforcement for the purposes of holding a county liable under § 1983. The Sheriff of Harris County, Ed Gonzalez, is an official policymaker of the aforementioned policies, and his actions in allowing and endorsing the illegal actions of his officers, including Defendant Brewer, renders the foregoing the official policies, practices, and/or customs of Harris County.

54. Alternatively, Harris County had a policy, practice, and/or custom of inaction and omission based on the failure to implement procedural safeguards for each enumerated policy, practice, and/or custom contained in ¶ 44 (a)-(v), ¶ 45, and ¶ 46, that would have prevented the constitutional violations suffered by Mr. Thomas.

55. Defendant Harris County's aforementioned policies, practices, and/or customs regarding the use of deadly force against African American males, non-dangerous subjects, and/or mentally ill subjects and those individuals in crisis, was the moving force and proximate cause of Mr. Thomas's death.

56. As a direct and proximate result of the aforementioned conduct, Mr. Thomas suffered terror and fear as Defendant Brewer fired his weapon at Mr. Thomas, striking him, and causing his death. Mr. Thomas also suffered physical injury, emotional distress, psychological trauma, conscious pain and suffering, and ultimately death as a result of the aforementioned conduct.

57. As further direct and proximate result of the aforementioned conduct, Mr. Thomas's surviving family members, heirs, and assigns, and/or next of kin, have suffered permanent damages including, but not limited to: grief, anguish, emotional distress, funeral and burial costs, loss of society and companionship, and other damages.

## COUNT 5: *MONELL* LIABILITY AGAINST DEFENDANT HARRIS COUNTY: FAILURE TO TRAIN AND SUPERVISE

58. Plaintiffs adopt and incorporate by reference each and every allegation in the preceding paragraphs as though fully set forth herein.

59. Harris County, by and through the Harris County Sheriff's Office and Sheriff Ed Gonzalez, does not adequately train and supervise its deputies regarding the following areas of law enforcement:

    a. The use of force, including excessive and deadly force;

    b. The use of force, including excessive and deadly force, when confronting non-dangerous subjects;

    c. The use of force, including excessive and deadly force, disproportionally used against African American males;

d. The use of force, including excessive and deadly force, when confronting a person in crisis and dealing with mental health issues;

e. De-escalation tactics;

f. De-escalation tactics when confronting non-dangerous subjects;

g. De-escalation tactics given the disproportionate use of force against African American males;

h. De-escalation tactics when confronting a person in crisis and dealing with mental health issues;

i. Avoidance of force except where necessary when confronting non-dangerous subjects;

j. Avoidance of force except given the disproportionate use of force against African American males;

k. Avoidance of force except where necessary when confronting a person in crisis and dealing with mental health issues;

l. Good detention procedures;

m. The management and detention of those with physical injuries and mental illness;

n. The use of supplemental restraints;

o. Implicit Bias-awareness training to ensure that Harris County deputies do not discriminate on the basis of race and other characteristics;

p. Stop, search, citation, and arrest practices that adhere to the Fourth Amendment and do not discriminate on the basis of race or any other protected characteristic;

q. The use of body worn cameras; and

r. Specialized responses to incidents involving individuals in mental health crisis.

60. Additionally, Defendant Harris County had an unconstitutional policy, practice, and/or custom of failing to adequately investigate and discipline police officers who used excessive force on citizens, especially African American males and those in crisis and dealing with mental health issues.

61.    Defendant Harris County also had an unconstitutional policy, practice, and/or custom of failing to timely report incidents of officer-involved shootings.

62.    Defendant Harris County also had an unconstitutional policy, practice, and/or custom of failing to timely report incidents of officer's uses of deadly force.

63.    Additionally, Defendant Harris County failed to maintain close and effective supervision of officers, including not enforcing deputies' use of body-worn and in-car cameras, and requiring supervisors to review camera footage as part of misconduct and take corrective and disciplinary action.    Further, Defendant Harris County failed to collect data on its operations needed for it to continue to learn and improve upon its police practices, report information, act with transparency, and hold responsible officers liable.

64.    The acts of Defendant Brewer were endorsed and approved by Harris County and the Harris County Sheriff's Office and Harris County Sheriff's Office employees, including Defendant Brewer and were a result of Harris County's failure to train and supervise.    Harris County, by and through the Harris County Sheriff's Office, ratified the conduct of its deputies and officers in that one or more authorized policymaker(s) for the county approved of the decisions of such deputies and the basis for them, thus making Harris County responsible for such conduct.

65.    At all times relevant hereto, Defendant Harris County and Defendant Brewer acted under color of state law.

66.    Under Texas law, sheriffs are "final policymakers" in the area of law enforcement for the purposes of holding a county liable under § 1983.    The Sheriff of Harris County is an official policymaker of the aforementioned policies, and his actions in allowing and endorsing the illegal actions of his officers, including Defendant Brewer, and for Harris County Sheriff's

Office's own failures to train and supervise, renders the foregoing the official policies, practices, and/or customs of Harris County.

67.     Harris County, by and through the Harris County Sheriff's Office and Sheriff Ed Gonzalez, improperly and inadequately trained and supervised its deputies in each of the aforementioned respects. This failure to train and supervise was the moving force and proximate cause of Mr. Thomas's death.

68.     As a direct and proximate result of the aforementioned conduct, Mr. Thomas suffered terror and fear as Defendant Brewer fired his weapon at Mr. Thomas, striking him, and causing his death. Mr. Thomas also suffered physical injury, emotional distress, psychological trauma, conscious pain and suffering, and ultimately death as a result of the aforementioned conduct.

69.     As further direct and proximate result of the aforementioned conduct, Mr. Thomas's surviving family members, heirs, and assigns, and/or next of kin, have suffered permanent damages including, but not limited to: grief, anguish, emotional distress, funeral and burial costs, loss of society and companionship, and other damages.

## COUNT 6: STATE LAW CLAIM AGAINST DEFENDANT BREWER IN HIS INDIVIDUAL CAPACITY: WRONGFUL DEATH

70.     Plaintiffs adopt and incorporate by reference each and every factual allegation in the preceding paragraphs as though fully set forth herein.

71.     Plaintiffs bring Count 6 only against Defendant Brewer in his individual capacity.

72.     The following Plaintiffs are the surviving heirs of Danny Ray Thomas:

    a.  Donald Woods, Mr. Thomas's father;

    b.  Adenike Thomas; Mr. Thomas's daughter;

    c.  M.K. Thomas; Mr. Thomas's daughter.

d.   B.D. Turner; Mr. Thomas's son.

e.   D.R. Thomas (12); Mr. Thomas's son.

f.   D.R. Thomas (3); Mr. Thomas's son.

g.   L.T. Thomas; Mr. Thomas's daughter.

73.     Plaintiffs bring this wrongful death cause of action pursuant to Texas Civil Practice and Remedies Code Section 71.001, *et seq.*, because of the injuries suffered by Danny Ray Thomas, resulting in Danny Ray Thomas's wrongful death.  At the time of Danny Ray Thomas's wrongful death, Danny Ray Thomas was survived by his children, siblings, and father.  Those Plaintiffs named above in ¶ 72(a)-(g) are persons entitled to recover damages in this action.  At the time of this wrongful death, Danny Ray Thomas was in good physical health with a normal life expectancy. The Plaintiffs named above suffered immeasurable losses and damages, and seek relief under the Texas Wrongful Death Act.

74.     Defendant Brewer is liable for the physical harm caused by his intentional, negligent, and/or grossly negligence conduct which led to the death of Mr. Thomas.

**COUNT 7:   STATE LAW CLAIM AGAINST DEFENDANT BREWER IN HIS INDIVIDUAL CAPACITY: SURVIVAL**

75.     Plaintiffs adopt and incorporate by reference each and every factual allegation in the preceding paragraphs as though fully set forth herein.

76.     Plaintiffs bring Count 7 only against Defendant Brewer in his individual capacity.

77.     Plaintiff Marketta Thomas, on Behalf of the Estate of Danny Ray Thomas, asserts this cause of action pursuant to Texas Civil Practice and Remedies Code Section 71.021.  Plaintiff seeks damages for the physical pain and mental anguish and other damages suffered by Danny Ray Thomas, who, although, did die as a result of the wrongful and negligent conduct of Defendant Brewer, did not die instantly.  As a direct and proximate result of the negligence of Defendant

Brewer, Danny Ray Thomas suffered severe bodily injuries and mental anguish up to the time of his untimely death. At the time of his injuries and subsequent death, Danny Ray Thomas was in good physical health with a normal life expectancy.

**COUNT 8:   STATE LAW CLAIM AGAINST DEFENDANT BREWER IN HIS INDIVIDUAL CAPACITY: NEGLIGENCE**

78.     Plaintiffs adopt and incorporate by reference each and every factual allegation in the preceding paragraphs as though fully set forth herein.

79.     Plaintiffs bring Count 8 only against Defendant Brewer in his individual capacity.

80.     Defendant Brewer was negligent.  Defendant Brewer owed a duty to Plaintiffs to use reasonable care when operating a deadly weapon.  Defendant Brewer had a duty to exercise the degree of care that a reasonably prudent person would use to avoid harm to others under circumstances similar to those described herein.  Plaintiffs' damages were proximately caused by Defendant Brewer's negligence, carelessness, and reckless disregard of his said duty.

81.     Defendant Brewer's negligence proximately caused the occurrence that made the basis of this cause of action, including the injuries sustained by Mr. Thomas.

**COUNT 9:   STATE LAW CLAIM AGAINST DEFENDANT BREWER IN HIS INDIVIDUAL CAPACITY: GROSS NEGLIGENCE**

82.     Plaintiffs adopt and incorporate by reference each and every factual allegation in the preceding paragraphs as though fully set forth herein.

83.     Plaintiffs bring Count 9 only against Defendant Brewer in his individual capacity.

84.     Plaintiffs would show the Court and the Jury that the conduct of Defendant Brewer described herein constitutes gross negligence as defined by Texas Civil Practice & Remedies Code § 41.001(11)(A)-(B).  Defendant Brewer is liable to Plaintiffs for gross negligence—to wit:

      a.     Defendant Brewer consciously and/or deliberately engaged in recklessness, willfulness, wantonness and/or malice through Defendant Brewer's actions

and/or inactions and Defendant Brewer should be liable in punitive and exemplary damages to Plaintiff; and

      b.    Defendant Brewer's actions or inactions directly and proximately caused injury to Plaintiff, which resulted in the damages detailed below.

85.    Defendant Brewer's grossly negligent conduct proximately caused Plaintiffs' damages. As a result of such gross negligence of Defendant Brewer, Plaintiffs are entitled to exemplary damages.

86.    The conduct of Defendant Brewer was more than momentary thoughtlessness, inadvertence, or error of judgment, and was of such a character as to make Defendant Brewer guilty of gross negligence. Defendant Brewer's acts or omissions involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others of which Defendant Brewer had actual awareness, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others, and Plaintiff therefore sues for exemplary damages, pursuant to Texas Civil Practice & Remedies Code § 41.003, in the amount determined by the trier of fact.

87.    Defendant Brewer knowingly placed Danny Ray Thomas in a dangerous situation. It was foreseeable that someone could be harmed by Defendant Brewer's serious gross negligence. Defendant Brewer's knowing, and intentional conduct allows Plaintiffs to recover exemplary damages from Defendant Brewer.

## COUNT 10:  AMERICANS WITH DISABILITIES ACT CLAIM AGAINST HARRIS COUNTY

88.    Plaintiffs adopt and incorporate by reference each and every factual allegation in the preceding paragraphs as though fully set forth herein.

89.    Danny Ray Thomas had a disability protected by the Americans with Disabilities Act; his impaired capacity and state of distress was evident to any reasonable officer facing the same circumstances as Defendant Brewer faced.

90.     On or about March 22, 2018, Danny Ray Thomas' statutory right to be free from benefit, exclusion, and discrimination because of his disability by a sheriff's deputy acting under color of state law was:

    a.  secured to him by the Americans with Disabilities Act ("ADA");

    b.  clearly established within the Southern District of Texas; and

    c.  violated by Harris County and its employees.

91. Harris County discriminated against and excluded Danny Ray Thomas from benefits by:

    a.  Intentionally excluding Danny Ray Thomas from proper accommodations in light of Danny Ray Thomas' known disability;

    b.  Failing to make reasonable accommodations for Danny Ray Thomas' known disability at all stages of Harris County's seizure and custody of Danny Ray Thomas;

    c.  Refusing to consider Danny Ray Thomas' disability before and after Defendant Brewer's conduct took place as described herein;

    d.  Refusing to timely call for help for Danny Ray Thomas before and after Defendant Brewer's conduct took place as described herein;

    e.  Refusing to properly train and supervise the officers in charge of timely calling for help for Danny Ray Thomas;

    f.  Refusing to adequately investigate Defendant Brewer's conduct as described herein;

    g.  Refusing to properly supervise the investigation of Defendant Brewer's conduct as described herein;

h.  Refusing to require an adequate investigation of Defendant Brewer's conduct as described herein; and

i.  Refusing to timely offer Danny Ray Thomas medical services after Defendant Brewer shot him.

## COUNT 11:   SECTION 504 OF THE REHABILITATION ACT AGAINST HARRIS COUNTY

92.     Plaintiffs adopt and incorporate by reference each and every factual allegation in the preceding paragraphs as though fully set forth herein.

93.     Danny Ray Thomas had a disability protected by the Americans with Disabilities Act and Section 504 of the Rehabilitation Act; his impaired capacity and state of distress was evident to any reasonable officer facing the same circumstances as Defendant Brewer faced.

94.     On or about March 22, 2018, Danny Ray Thomas' statutory right to be free from benefit, exclusion, and discrimination because of his disability by a sheriff's deputy acting under color of state law was:

a.  secured to him by Section 504 of the Rehabilitation Act;

b.  clearly established within the Southern District of Texas; and

c.  violated by Harris County and its employees.

95.     Harris County discriminated against and excluded Danny Ray Thomas from benefits by:

a.  Intentionally excluding Danny Ray Thomas from proper accommodations in light of Danny Ray Thomas' known disability.

b.  Failing to make reasonable accommodations for Danny Ray Thomas' known disability at all stages of Harris County's seizure, detention, and custody of Danny Ray Thomas;

c. Refusing to consider Danny Ray Thomas' disability before and after Defendant Brewer's conduct took place as described herein;

d. Refusing to timely call for help for Danny Ray Thomas before and after Defendant Brewer's conduct took place as described herein;

e. Refusing to properly train and supervise the officers in charge of timely calling for help for Danny Ray Thomas;

f. Refusing to adequately investigate Defendant Brewer's conduct as described herein;

g. Refusing to properly supervise the investigation of Defendant Brewer's conduct as described herein;

h. Refusing to require an adequate investigation of Defendant Brewer's conduct as described herein; and

i. Refusing to timely offer Danny Ray Thomas medical services after Defendant Brewer shot him.

## VII.
## DAMAGES

96. Plaintiffs adopt and incorporate by reference each and every factual allegation in the preceding paragraphs as though fully set forth herein.

97. Plaintiffs seek all damages allowed by law as a result of the aforementioned conduct forming the basis for each of Plaintiffs' causes of action. Plaintiffs request damages within the jurisdictional limits of the Court.

98. Upon the trial of this cause, it will be shown that Mr. Thomas sustained serious, permanent injuries, and ultimate death, and Plaintiffs incurred serious damages. The damages sustained by Mr. Thomas and his heirs were proximately caused by the Defendants as set forth

herein.  Plaintiffs respectfully request the Court and a Jury determine the amount of the loss Mr. Thomas and his heirs have incurred in the past and will incur in the future.

99.	There are certain elements of damages provided by law that Mr. Thomas is entitled to have the Jury in this case separately consider determining the sum of money for each element that will fairly and reasonably compensate the Plaintiffs.

100.	Plaintiffs are further entitled to reasonable attorneys' fees and costs in pursuing this matter, and any other reasonable and necessary damages as allowed by law.

## VIII.
## DEMAND FOR JURY TRIAL

101.	Plaintiffs demand a trial by jury as to each and every cause of action against each and every Defendant.

## IX.
## PRESERVATION OF EVIDENCE/SPOLIATION NOTICE

102.	Plaintiffs hereby request and demand that Defendants preserve and maintain all evidence pertaining to any claim or defense related to the incident made the basis of this lawsuit, or the damages resulting therefrom.  Failure to maintain such items shall constitute a "spoliation" of the evidence.

## X.
## CONDITIONS PRECEDENT

103.	All conditions precedent to Plaintiffs' right to recover the relief sought herein occurred or have been performed.

## XI.
## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs seek judgment in their favor and against Defendant Harris County and Defendant Brewer, ordering the Defendants to pay all damages recoverable under law to the Plaintiff, including the following:

    a. Compensatory damages for pecuniary losses, including but not limited to the costs related to the protections of Mr. Thomas's civil rights, civil liberties, immunities and privileges;

    b. Compensatory damages for the loss of life, loss of enjoyment of life, emotional pain, physical pain and mental suffering, suffering, inconvenience, mental anguish, loss of the society, association, and companionship of friends and family, loss of the parent-child relationship, deprivation of legal rights, privilege, and immunities (disenfranchisement) and other non-pecuniary losses;

    c. Compensatory damages for the loss of earning capacity; disfigurement; physical impairment; death; and medical expenses

    d. Punitive damages;

    e. Pre-judgment interest;

    f. Costs of suit and fees as allowable by law;

    g. Attorneys' fees under 42 U.S.C. § 1988;

    h. Expert fees under 42 U.S.C. § 1988; and

    i. Any other such relief as is deemed just and proper.

Submitted this 24th day of September 2018.

**HILLIARD MARTINEZ GONZALES LLP**

By: */s/ Robert C. Hilliard*
Robert C. Hilliard
Federal I.D.
State Bar No. 09677700
bobh@hmglawfirm.com

**LEAD ATTORNEY OF RECORD FOR PLAINTIFFS**

John B. Martinez
State Bar No. 24010212
john@hmglawfirm.com

Catherine T. Hilliard
State Bar No. 24013642
catherine@hmglawfirm.com
Marion M. Reilly
State Bar No. 24079195
marion@hmglawfirm.com
Jessica J. Pritchett
State Bar No. 24102377
jpritchett@hmglawfirm.com
David O.B. Runcie
State Bar No. 24086263
druncie@hmglawfirm.com

**HILLIARD MARTINEZ GONZALES LLP**
719 S. Shoreline Boulevard
Corpus Christi, Texas 78401
Telephone No.: 361.882.1612
Facsimile No.: 361.882.3015

- and –

Ben Crump
State Bar No. 72583
ben@bencrumplaw.com
Scott Carruthers
State Bar No. 355690
scott@bencrumplaw.com

**BEN CRUMP LAW PLLC**
122 S. Calhoun Street
TALLAHASSEE, FL 32301


**ATTORNEYS FOR PLAINTIFFS**